13-2271-cv
*In re Grand Jury Proceedings*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of December, two thousand thirteen.

PRESENT:   DEBRA ANN LIVINGSTON,
                        SUSAN L. CARNEY,
                                          Circuit Judges,
                        JOHN G. KOELTL,*
                                          District Judge.

------

ABC,

                              *Plaintiff-Appellee*,

        -v-                                                                No. 13-2271-cr

GERALD KOCH,

                              *Movant-Appellant*,

DEF,

                              *Defendant*.

------

------

\* The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

SUSAN V. TIPOGRAPH (Gráinne E. O'Neill, David B. Rankin, Moira Meltzer-Cohen, *on the brief*), New York, NY, *for Movant-Appellant*.

JOHN P. CRONAN (Jocelyn E. Strauber, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Plaintiff-Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Movant-Appellant Gerald Koch ("Koch") appeals from a judgment of the United States District Court for the Southern District of New York (Keenan, *J.*), entered May 21, 2013.[1] The district court held Koch in civil contempt for refusing to testify before a federal grand jury despite a grant of immunity from prosecution under 18 U.S.C. §§ 6002 and 6003. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues raised on appeal.

**I. Closed Courtroom**

Koch claims that the district court erred in closing the courtroom during the initial part of the contempt proceeding, held on May 16, 2013. We disagree. Initially, we note that Koch has

---

[1] Under 28 U.S.C. § 1826(b), appeals of civil contempt orders "shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal." This Court has held that § 1826(b) is not jurisdictional, and thus we maintain the power to decide this appeal. *In re Grand Jury Proceedings*, 776 F.2d 1099, 1102 (2d Cir. 1985). In general, we have hewed closely to the time limitations of § 1826(b). *See, e.g.*, *In re Grand Jury Subpoena Served on Doe*, 889 F.2d 384, 385 (2d Cir. 1989); *In re Archuleta*, 561 F.2d 1059, 1059 n.1 (2d Cir. 1977). In this case, however, neither Koch nor the government properly raised the applicability of § 1826(b) until the government's scheduling notification of September 11, 2013, when more than three months had already elapsed after Koch filed this appeal. At that time, the government, with Koch's consent, proposed an expedited briefing schedule. Koch moved for an expedited appeal schedule on October 11, 2013, and his motion was granted on October 17, 2013; he did not request any relief other than the expedited schedule.

waived this claim.  In a letter dated May 16, 2013, the government proposed that Koch's contempt proceeding proceed in two steps, the first portion of which was to occur on May 16.  On pages one and two of the letter, the government asked the district court to have the grand jury foreperson and court reporter testify about the warnings Koch received and the questions he refused to answer before the grand jury earlier on May 16, 2013.  The government proposed that those proceedings before the district court be closed pursuant to Federal Rule of Criminal Procedure 6(e)(5), and Koch's counsel explicitly stated that she had "no objections to the portion of the proceedings that are [sic] outlined . . . at pages 1 and 2 of the letter."  Having consented to the closure of the May 16 proceedings, Koch waived any right to object to that closure.  *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks and citation omitted)).  Moreover, it is well settled that Koch, having failed to object to the closure of the initial portion of his contempt proceeding on May 16, cannot now claim that the closure violated his Due Process right to a public proceeding.  *See Levine v. United States*, 362 U.S. 610, 619 (1960) ("The continuing exclusion of the public in this case is not deemed contrary to the requirements of the Due Process Clause without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding . . . ."); *In re Bongiorno*, 694 F.2d 917, 921-22 (2d Cir. 1982) (same).

In any event, the law is clear that the portion of a contempt hearing that involves testimony regarding an ongoing grand jury proceeding can occur in a closed courtroom.  *See Levine*, 362 U.S. at 618 ("Petitioner had no right to have the general public present while the grand jury's questions were being read."); *In re Rosahn*, 671 F.2d 690, 697 (2d Cir. 1982) ("[A] contempt trial may properly be closed to the public when substantive grand jury matters are being considered . . . .");

3

*see also In re Grand Jury Subpoena*, 103 F.3d 234, 243 (2d Cir. 1996) ("[T]he law of this circuit weighs against disclosure of grand jury information . . . while the grand jury investigation remains active."). The proceeding on May 16 involved only testimony concerning events in the grand jury. While the remainder of a contempt proceeding must be held in public, *see Rosahn*, 671 F.2d at 697, there is no claim here that the second portion of Koch's contempt proceeding, held on May 21, was closed. Accordingly, we reject Koch's first claim.

## II. Unlawful Electronic Surveillance

Second, Koch argues that the district court erred in not requiring the government to provide further information in support of its affirmation that the subpoena requiring Koch's testimony in the grand jury was not based on electronic surveillance. For the following reasons, we again disagree.

Communications intercepted in violation of federal law cannot be received in evidence in a grand jury proceeding, *see* 18 U.S.C. § 2515, and grand jury witnesses who refuse to testify can rely on this provision as a defense in contempt proceedings, *see Gelbard v. United States*, 408 U.S. 41, 47 (1972). A witness claiming that unlawful surveillance gave rise to questions in the grand jury under § 2515 can require the government to "affirm or deny" the occurrence of wiretapping under 18 U.S.C. § 3504(a)(1). *United States v. Pacella*, 622 F.2d 640, 643 (2d Cir. 1980) (citing *Gelbard*, 408 U.S. 41). "[T]he duty of the government to respond under § 3504 may vary with the specificity of the claims raised by the witness." *United States v. Yanagita*, 552 F.2d 940, 944 (2d Cir. 1977).

Here, even assuming that Koch has presented a colorable basis for his belief that he has been subject to unlawful wiretapping – itself a dubious assumption – the government has fulfilled any

4

obligation imposed by § 3504.[2] John Cronan ("Cronan"), the Assistant United States Attorney assigned to the investigation, affirmed to the district court that the subpoena requiring Koch's testimony in the grand jury was not based on electronic surveillance. Cronan also submitted a sealed *ex parte* declaration, made under penalty of perjury, that provided the district court with further assurance to this effect. We have held that the prosecuting attorney's denial of unlawful wiretapping, coupled with an *in camera* submission in support of the denial, suffices under § 3504. *See Pacella*, 622 F.2d at 643. Contrary to Koch's claim that affidavits from other government agencies should have been provided, moreover, we have also stated specifically that "where the questions asked of a grand jury witness are narrow in scope, an affidavit by the Assistant United States Attorney in charge of the grand jury proceeding, as distinguished from an all-agency search, will suffice, since he would know if his questions were derived from illegal surveillance." *Yanagita*, 552 F.2d at 944; *see also United States v. Grusse*, 515 F.2d 157, 159 (2d Cir. 1975) (Lumbard, J., concurring) ("[A]ny electronic surveillance by the government is relevant only if it is somehow used in formulating questions that the grand jury intends to ask. Thus, surveillance conducted by the

---

[2] Though we need not decide whether Koch has presented a sufficient basis on which to require the government's response, "this Court has consistently held that although the claim need not be particularized, it may not be based upon mere suspicion but must at least appear to have a colorable basis before it may function to trigger the government's obligation to respond under § 3504." *Pacella*, 622 F.2d at 643 (alterations and internal quotation marks omitted). The fact that Koch has experienced difficulties with his cellular telephone calls and has noticed wireless networks whose names purport to associate them with federal agencies likely does not create a sufficient inference that there was any interception of Koch's communications. *See Archuleta*, 561 F.2d at 1062 (expressing doubt that a grand jury witness's "recitation of difficulties in completing calls, together with strange noises heard on completed calls," together with an affidavit of an associate who had been asked by the FBI if she had telephoned the witness, was sufficient for "even the preliminary showing necessary to require the government to respond to his claim of illegal electronic surveillance").

5

government, the results of which were not known to the agents investigating this case, would not be relevant."). We thus conclude that Koch's claim that the district court erred in not requiring any further government submission is without merit.

### III. First Amendment Claim

Koch argues next that he may properly refuse to comply with the grand jury subpoena because this subpoena infringes on his First Amendment rights. We disagree. "To perform its broad investigative function, the grand jury must be able to ask questions intended to probe witnesses for information about knowledge or conduct relevant to the criminal offense being investigated." *United States v. Suleiman*, 208 F.3d 32, 40 (2d Cir. 2000); *see also United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 168 (2d Cir. 2008) (noting that the function of the grand jury, as the Supreme Court has stated, is "to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred" (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991)) (internal quotation marks omitted)). We have previously outlined the relevant standards to be considered when a grand jury witness asserts a substantial First Amendment interest in resisting a subpoena:

> First, the interests of the state must be compelling and able to survive exacting scrutiny as to whether they are sufficiently important to outweigh the possibility of infringement. Second, there must be some substantial relation between the governmental interest and the information required to be disclosed. Third, justifiable governmental goals may not be achieved by unduly broad means having an unnecessary impact on protected rights of speech, press, or association. Finally, an otherwise justifiable investigation may be curtailed when a showing is made that a particularized harm such as harassment or reprisals may result from the disclosure of associational relationships.

*In re Grand Jury Proceedings*, 776 F.2d 1099, 1102-03 (2d Cir. 1985) (citations and internal quotation marks omitted). Even assuming *arguendo* that Koch has raised a viable First Amendment

6

interest, he provides no basis for concluding that he should not be required to comply in light of these considerations.

The grand jury convened in this matter is investigating a serious crime, and the government has made a convincing showing of its need to ask the questions at issue. *See Branzburg v. Hayes*, 408 U.S. 665, 700 (1972) ("[T]he investigation of crime by the grand jury implements a fundamental governmental role of securing the safety of the person and property of the citizen."). Where, as here, questions in the grand jury may "supply information to help the government determine whether illegal conduct ha[s] occurred and, if it ha[s], whether there [is] sufficient evidence to return an indictment," the government has shown the substantial relationship between a compelling government interest and the information sought. *In re Grand Jury Proceedings*, 776 F.2d at 1103 (quoting *Branzburg*, 408 U.S. at 700) (internal quotation marks omitted). Here, the government has properly demonstrated that it seeks Koch's testimony related to the crime based on credible evidence that he may have information regarding the underlying events, and the information sought relates directly to the crime in question. Finally, the questions asked of him do not "attempt to invade protected First Amendment rights by forcing wholesale disclosure of names and organizational affiliations for a purpose that [is] not germane to the determination of whether crime has been committed." *Branzburg*, 408 U.S. at 700. To the contrary, these questions focus specifically on his knowledge of the criminal conduct under investigation. *Compare, e.g.*, *In re Grand Jury Proceedings*, 776 F.2d at 1101, 1103 (questions regarding the organization and operations of the Hell's Angels Motorcycle Club). Koch's First Amendment claim is thus without merit.

We have considered all of Movant-Appellant's remaining arguments and find them, too, to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk