Frank A. ANGLIN, Jr., Petitioner-Appellant,

v.

Steven JOHNSTON, Parole Executive, United States Board of Parole, et al., Respondents-Appellees.

No. 74-1509.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1974.

Decided Nov. 1, 1974.
Certiorari Denied March 3, 1975.
See 95 S.Ct. 1353.

A  No.

· Gerald Werksman, Chicago, Ill., for petitioner-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Michael D. Groark, Asst. U. S. Attys., Chicago, Ill., for respondents-appellees.

Before SWYGERT, Chief Judge, FAIRCHILD and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal from the denial of a petition for a writ of habeas corpus poses the novel question of whether a pending federal sentence may be suspended in order to allow the prisoner to serve an intervening civil contempt sentence for his refusal, despite immunity, to testify before a grand jury.

I

The petitioner, Frank A. Anglin, Jr., was found guilty by a jury on January 10, 1972 of two counts of theft from an interstate shipment and illegal use of firearms. On February 23, 1972 he was sentenced by Judge McGarr to concurrent sentences of three years and one year and on March 19, 1973, the sentence was modified to be served pursuant to 18 U.S.C. § 4208(a)(2). On March 27, 1973, petitioner began to serve this sentence at the Federal Correctional Institution at Sandstone, Minnesota.

In May, 1973, petitioner was returned to the Northern District of Illinois pursuant to a petition for a writ of habeas corpus *ad testificandum* requested by the United States Attorney. On June 20, 1973, he was granted immunity and brought before the special 1972 grand jury and asked questions which he refused to answer. On June 20, petitioner was adjudged in contempt of court by Judge Robson and committed to the custody of the United States marshal until such time as he should obey the order. Petitioner was incarcerated in the Cook County, Illinois jail pursuant to the civil contempt order, where he remains at the present time.

On April 17, 1974, petitioner filed his application for writ of habeas corpus seeking an opportunity to appear before the Board of Parole, credit against his criminal sentence for time served pursuant to his contempt commitment, and his return to Sandstone for concurrent service of the two sentences.

Upon the government's motion, Judge Robson entered an order on May 1, 1974, stating that the court's "intention was that any time served by . . . Frank A. Anglin, Jr., for civil contempt was not to be counted toward the service of his criminal sentence . . ." and

> It is further ordered that while . . . [Anglin] is confined pursuant to this order his criminal sentence . . . shall be and hereby is ordered suspended and held in abeyance.

In the meantime petitioner had been advised by the Board of Parole of the Bureau of Prisons' Policy Statement 7300.92, issued November 13, 1973, which provides in part:

> 3. c. If the federal criminal sentence is being served when the civil contempt sentence is ordered, the criminal sentence will be suspended for the duration of the contempt sentence. The criminal sentence will be recorded as inoperative for this period.
>
> (1) The time spent serving the contempt sentence will be inoperative on any other sentence being served. Bureau facilities will be responsible for obtaining inoperative time data from marshals for sentence computation purposes.

\* \* \* \* \* \*

d. Time spent serving civil contempt sentences will not be custody as contemplated by 18 U.S.C. 3568.

On May 31, 1974, Judge McGarr denied the petition for writ of habeas corpus, stating:

To afford the petitioner the relief he requests would be to render Chief Judge Robson's contempt citation meaningless and inoperative. The "recalcitrant witness" statute, Title 28 U.S.C. § 1826(a) has been upheld under constitutional attack, Stewart v. United States (9th Cir. 1971), 440 F. 2d 954, affirmed 406 U.S. 441, 92 S. Ct. 1653, 32 L.Ed.2d 212, rehearing denied 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345, and clearly authorizes the Court to confine a recalcitrant witness as an incentive to compel the testimony sought. The granting of the petitioner's requests herein would remove the incentive in contravention of congressional intent. The petitioner would suffer no detriment for his refusal to testify and 28 U.S.C. § 1826(a) would have no meaning.

Anglin v. Johnston, 378 F.Supp. 750, 751 (N.D.Ill.1974).

## II

Petitioner's confinement for civil contempt was authorized by 28 U.S.C. § 1826(a), which is silent as to the effect of such confinement upon pending criminal sentences.[1]

Petitioner has relied principally upon 18 U.S.C. § 3568, which provides in part:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary . . . for service of such sentence. *The Attorney General shall give* any such person *credit* toward service of his sentence *for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term "offense" means any criminal offense.* . . . (Emphasis added.)

The language of section 3568 is unambiguous. Credit shall be given for time spent "in connection with the offense or acts for which sentence was imposed" and "offense" is defined as a "criminal offense." The confinement for which petitioner seeks credit was imposed in connection with a civil contempt (refusal to testify) and not in connection with the criminal offense "for which sentence was imposed" (theft from interstate shipment and illegal use of firearms). Hence the language of section 3568 does not support petitioner. The parties have not directed us to any pertinent legislative history relative to either section 3568 or 28 U.S.C. § 1826(a) nor have we discovered any which would tend to solve the issue on appeal.

We must look to analogous situations where the sentence for a criminal offense has been held to be or not to be suspended for the duration of an intervening event.

In Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923), the Supreme Court held that a paroled prisoner who served a state sentence before his parole was revoked was not entitled to credit for either the time that he was

---

1. 28 U.S.C. § 1826(a) provides:

Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

free on parole or while serving the state sentence.

In *Zerbst v. Kidwell*, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938), the Court similarly held that prisoners were not entitled to credit for either time spent while free on parole or while serving sentences for the commission of second federal offenses, at the termination of which they resumed serving the balance of the original sentences.

However, the statute providing for the retaking of a parole violator expressly states that "[t]he unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General . . ., and the time the prisoner was on parole shall not diminish the time he was sentenced to serve." 18 U.S.C. § 4205.

Both *Anderson* and *Zerbst* noted that the subject prisoners' "status and rights were analogous to those of an escaped convict." *Anderson, supra* at 196, 44 S.Ct. at 45; *Zerbst, supra* at 361, 58 S. Ct. at 873. In *Anderson* the Court added that "[e]scape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term." 263 U.S. at 196, 44 S.Ct. at 44; *see also* Theriault v. Peek, 406 F.2d 117 (5th Cir. 1968), cert. denied, 394 U.S. 1021, 89 S. Ct. 1644, 23 L.Ed.2d 47 (1969)[2].

The federal escape statute, (18 U.S.C. § 752), as does the recalcitrant witness statute, (28 U.S.C. § 1826(a)), fixes a penalty for the offense without stating the effect of that penalty upon pending criminal sentences.

When probation is revoked, time spent on probation cannot, in the absence of an express order so providing, be credited on a previously imposed sentence. United States v. Hawkins, 492 F.2d 771 (5th Cir. 1974); Baber v. United States, 368 F.2d 463 (5th Cir. 1966); Thomas v. United States, 327 F.2d 795 (10th Cir. 1964); United States v. Guzzi, 275 F.2d 725 (3d Cir. 1960). The refusal to credit probation time against the prison sentence is not double jeopardy. Kaplan v. Hecht, 24 F.2d 664, 665 (2d Cir. 1928). This is true although a prisoner on probation is "not a free man, but . . . [is] undergoing punishment and restraint in execution of the judgment of conviction. . . ." *Id.*

The probation statute, 18 U.S.C. § 3653, unlike the parole statute, is silent as to the effect of probation time on the prison sentence upon revocation of probation, but does provide that "the court may revoke the probation and require . . . [the probationer] to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."[3] 18 U.S.C. § 3653.

Freedom on bail bond or on one's own recognizance subsequent to arrest and prior to conviction is not to be credited upon the ultimate sentence even though under Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), a person subject to freedom under such conditions is considered "in custody" within the meaning of the federal habeas corpus statute. Cochran v. United States, 489 F.2d 691 (5th Cir. 1974).

2. Similarly, upon an application for a writ of habeas corpus in the federal district court by a state prisoner, the Court of Appeals affirmed the denial of the writ, holding that a state sentence is tolled by escape and time does not resume running until the prisoner is returned to the state prison. Phillips v. Dutton, 378 F.2d 898 (5th Cir. 1967).

3. Another variation is that of a prisoner who is granted conditional release at the end of his term less time deducted for good conduct, pursuant to 18 U.S.C. § 4163, then violates the terms of release and is retaken. He is required to serve the remainder of his sentence and the time spent between discharge and retaking is not credited in diminution of his sentence. Garnett v. Blackwell, 423 F.2d 1211 (5th Cir. 1970). However, since 18 U.S.C. § 4164 provides that such a prisoner "shall, upon release, be deemed as if released on parole . . .," this situation is comparable to that of parole and no different emphasis can be placed upon it.

Likewise, the period an alleged offender is free pending appeal under Fed.R.App.P., Rule 9 is not to be credited against his ultimate sentence even though the bond is "highly restricted." Polakoff v. United States, 489 F.2d 727 (5th Cir. 1974).

Both the release on bail (18 U.S.C. §§ 3141–3152) and release pending appeal (Fed.R.App.P., Rule 9) provisions are silent as to the effect of the time spent during such periods upon the ultimate sentence. Like the recalcitrant witness statute, 18 U.S.C. § 3150 applies penalties (for failure to appear) and section 3151 provides additionally that "[n]othing in this chapter shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt." 18 U.S.C. § 3151. Despite their silence as to effect on other sentences, these provisions have been held to have no diminution effect on such other sentences.

We have already seen that under *Anderson* and *Zerbst, supra,* time spent for other federal offenses or time spent in state custody is not to be credited against the sentence for a federal offense. *See also* Howard v. United States, 420 F.2d 478 (5th Cir. 1970).

The only situation where credit has been given for the serving of time for a different offense is where a state prisoner has been denied release on bail solely because of an outstanding federal detainer lodged against him. In that case courts have held that he is in custody "in connection with" the federal offense and entitled to credit against his federal sentence for time spent in state custody under those circumstances. Davis v. Attorney General, 425 F.2d 238 (5th Cir. 1970); Brown v. United States, 489 F.2d 1036 (8th Cir. 1974).

■■ In view of the totality of authority, we conclude that despite the silence of 28 U.S.C. § 1826(a) upon the subject, a prisoner serving a current federal sentence is not entitled to credit for time spent in custody for a civil contempt, unless, of course, the sentencing judge in the case of the contempt expressly makes the contempt confinement concurrent with the prior criminal sentence.[4]

We agree with Judge McGarr's observation that to permit petitioner to credit the contempt time against the criminal sentence would "remove the incentive . . . to compel the testimony sought" and render the statute nugatory when applied to a prisoner presently incarcerated.[5]

The other prayers in petitioner's application were dependent upon the crediting argument and fall with it. If credit is not to be given, as we here hold, the Bureau of Prisons' analysis of procedure to be followed as set forth in Policy Statement 7300.92 is correct.

The denial of the petition for a writ of habeas corpus is affirmed.

Affirmed.

---

4. We further conclude that the result would be the same even in the absence of Judge Robson's May 1, 1974 order, wherein he expressly made the contempt sentence consecutive to the criminal sentence by ordering that the criminal sentence be suspended and held in abeyance while the petitioner is confined pursuant to the contempt order.

5. Confinement for refusal to testify after the granting of immunity is "intended to operate in a prospective manner—to coerce, rather than punish. . . . While any imprison-ment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to testify." Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). Just as the prisoner procures his own escape or voluntarily violates probation or parole, he brings about his own confinement by his continued refusal to answer questions under immunity. He carries the keys for his release from confinement for civil contempt in his own pocket.